FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 28, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIFER C., | No. 1:24-CV-03043-RHW |
| Plaintiff, | REPORT AND RECOMMENDATION |
| v. | |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,[1] | ECF Nos. 9, 11 |
| Defendant. | |

**BEFORE THE COURT** is Plaintiff's Opening Brief and the Commissioner's Brief in response. ECF Nos. 9, 11. Attorney D. James Tree represents Jennifer C. (Plaintiff); Special Assistant United States Attorney Lori A. Lookliss represents the Commissioner of Social Security (Defendant). This matter was referred to the undersigned magistrate judge for issuance of a report and recommendation. ECF No. 13. After reviewing the administrative record and the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano, Commissioner of Social Security, is substituted as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

REPORT AND RECOMMENDATION . . . - 1

briefs filed by the parties, the Court **RECOMMENDS** Plaintiff's Motion, ECF No. 9, be **GRANTED** and Defendant's Motion, ECF No. 11, be **DENIED**.

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on December 17, 2019, alleging onset of disability beginning January 1, 2008. Tr. 17, 104, 241-53. The applications were denied initially and upon reconsideration. Tr. 145-60, 162-73. Administrative Law Judge (ALJ) Cecilia LaCara held a hearing on January 12, 2023, Tr. 54-95, and issued an unfavorable decision on February 16, 2023. Tr. 17-30. The Appeals Council denied Plaintiff's request for review on January 25, 2024, Tr. 1-6, and the ALJ's February 16, 2023, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on March 25, 2024. ECF No. 1.

## STANDARD OF REVIEW

The ALJ is tasked with "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595,

599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 404.1520(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On February 16, 2023, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 17-30.

At step one, the ALJ found Plaintiff, who met the insured status requirements of the Social Security Act through September 30, 2008, had not

engaged in substantial gainful activity since January 1, 2008, the alleged onset date. Tr. 20.

At step two, the ALJ determined Plaintiff had the following severe impairments: lumbar degenerative disk disease and obesity. *Id*.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 23.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform medium work, with the following limitations:

> [s]he is limited to occasional climbing ladders, ropes, and scaffolds. She can balance frequently. She must avoid moderate exposure to unprotected heights and hazards.

Tr. 24.

At step four, the ALJ found Plaintiff was able to perform past relevant work as a personal attendant; telephone solicitor; hospital cleaner; collector; residence leasing agent; nursery school attendant; and the composite job of gas station attendant/self-service laundry attendant. Tr. 28.

At step five, the ALJ found that in the alternative, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could also perform jobs that existed in significant numbers in the national economy, including the jobs of machine packager; hand packager; and cleaner II. Tr. 29.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from the alleged onset date through the date of the decision. Tr. 30.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and Title XVI of the Social Security

Act. The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff raises the following issues for review (1) whether the ALJ properly evaluated Plaintiff's symptom complaints; and (2) whether the ALJ properly evaluated the medical opinion evidence. ECF No. 9 at 2.

## DISCUSSION

**A.      Symptom Claims**

Plaintiff contends the ALJ erred by improperly rejecting Plaintiff's subjective complaints. ECF No. 9 at 4-15.

It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews,* 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work[.]"). Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony. *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause few of the alleged symptoms; and that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with her symptom reports to providers, the conservative nature of her treatment, and the objective medical findings. Tr. 25.

### 1. Objective Evidence

The ALJ discounted Plaintiff's symptom complaints because objective findings did not provide strong support for Plaintiff's allegations. *Id*. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Additionally, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster the ALJ's findings. *See, e.g., Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (citations omitted).

Here, the ALJ noted the record "shows complaints and treatment for back pain" as well as imaging "reflecting abnormalities in the lumbar spine." Tr. 26. The ALJ noted in Plaintiff's most recent record, Plaintiff "reported that her back pain was mild," but the ALJ cited to a page that does not exist in the record. *Id*. (citing "2F/142"). The ALJ appears to be referencing 3F/142 (Tr. 609), a discharge summary from hospitalization April 29-May 2, 2019, where Plaintiff's diagnoses included severe opioid use disorder, morbid obesity, community acquired pneumonia, and chronic obstructive pulmonary disease (COPD); records

show Plaintiff was there in 2019 for "opioid medical detox" for medications she "first started . . . 7 years ago for her lower back and hip pain." Tr. 602, 609. The records cited by the ALJ do note Plaintiff's report of mild back pain upon hospital admission, but the provider also noted Plaintiff had last used a narcotic painkiller "earlier today" and was "now complaining of mild pain in her lower back as well as in her let hip." Tr. 609. The ALJ left out context related to her reported pain level at that time, and the ALJ failed to mention the impairment(s) that were the focus of the 2019 hospitalization, including "severe opiate use disorder," as well as COPD. Tr. 26, 611. Records show diagnoses and treatment for chronic pain as well as COPD throughout much of the period at issue, however, which the ALJ failed to mention or adequately discuss in the decision.[2]

While the ALJ cited a record unrelated to Plaintiff's back impairment to discount her symptom complaints, the ALJ failed to discuss relevant objective findings that supported Plaintiff's symptom claims. Tr. 26. Indeed, the ALJ cited a 2015 MRI to support the finding that "imaging studies reflect[ed] abnormalities in the lumbar spine" and that "imaging revealed only mild to moderate abnormalities at one level of the lumbar spine," Tr. 26 (citing Tr. 582), but failed to discuss later imaging including a MRI in 2016 that showed "degenerative spondylosis of the lumbar spine, especially at L3-4, L4-5, and L5-S1" or 2016 imaging of her left hip, which showed likely "partial tear of the gluteus medius tendon." Tr. 579.

Additionally, the ALJ discounted Plaintiff's symptom reports of vertigo and dizziness because there was no evidence of a diagnosis of vertigo based on

---

[2] Records show diagnoses including COPD, chronic bronchitis, and asthma, and although the ALJ noted some "shortness of breath/upper respiratory symptoms," the ALJ concluded, without analysis, that respiratory issues were nonsevere; and the ALJ failed to include a limitation in the RFC for respiratory issues.

REPORT AND RECOMMENDATION . . . - 7

objective findings, and because workups with "brain scans were negative for abnormalities to establish a diagnosis correlated with claimant's reports of vertigo symptoms." Tr. 20, 27. The ALJ noted "imaging showed a small left ear issue that was described as stable and benign, and was not associated with vertigo or other symptoms." *Id*. (citing Tr. 1323). The imaging cited by the ALJ, however, is a follow up to a 2010 brain and auditory canal MRI which showed a 6mm finding at the left petrous apex, which was noted "may represent trapped fluid in the petrous apex, cholesteatoma of the petrous apex, apical petrositis, etc." Tr. 1347. A follow up MRI a year later showed "no change in the subcentimeter presumed benign, complex cystic focus at the left petrous apex . . . reassuring for benign process" and it was again noted that it "may represent a small focus of complex fluid trapped within a partially pneumatized petrous bone versus cholesteatoma." Tr. 1323.

While the ALJ concluded this finding was "not associated with vertigo or other symptoms," it is not clear how the ALJ reached this conclusion, as it is not found in the MRI report cited or elsewhere in the record. *Id*. In fact, medical providers who were aware of the imaging appear to have associated this finding with her reports of vertigo during the period at issue, and it is listed repeatedly in her medical records as a concern. *See, e.g.*, Tr. 434, 479 (past medical history noted with "chronic vertigo, 6mm spot trapped fluid in petrouse apex"), 484 (same), 487 (same), 519, 557, 874-75, 942, 1324. The ALJ's discounting Plaintiff's reports of vertigo because it was not associated with a diagnosis based on objective findings and that "imaging . . . was not associated with vertigo or other symptoms" is not supported by substantial evidence and is not an accurate characterization of the evidence of record.

On this record the ALJ's conclusion that objective findings did not provide strong support for Plaintiff's allegations is not supported by substantial evidence. Without further analysis, this was not a clear and convincing reason to discount her

REPORT AND RECOMMENDATION . . . - 8

symptom claims. Additionally, the ALJ failed to discuss relevant evidence and selectively presented evidence in a manner that minimized Plaintiff's impairments and/or subjective complaints, resulting in mischaracterization of the record.

*2. Conservative Treatment/Caregiver*

The ALJ also found that Plaintiff's conservative treatment was inconsistent with her allegations. Tr. 26. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Here, the ALJ concluded Plaintiff required only conservative treatment for back pain, consisting of medication, and that Plaintiff failed to substantiate "either the existence of a caregiver or the medical need for a caregiver due to vertigo symptoms" and "the overall record does not reflect vertigo symptoms severe enough to warrant caregiving services." Tr. 26. As discussed *supra*, records show treatment during the period at issue for chronic pain including back pain with opiate pain medications, and the ALJ failed to properly assess objective evidence related to her back impairment and chronic pain, as well as treatment for these issues and resultant opiate use disorder. On this record, the ALJ's conclusion Plaintiff's symptom claims were inconsistent with her conservative treatment is not supported by substantial evidence.

In terms of a caregiver, while Plaintiff contends DSHS records show Plaintiff was eligible for a caregiver, this is not evident from the records Plaintiff cited. Tr. 964-65, 970-71, 976-83. The ALJ has an independent duty, however, to fully and fairly develop a record in order to make a fair determination as to disability, even where, as here, the claimant is represented by counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1995). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty

to 'conduct an appropriate inquiry.'" *See Tonapetyan*, 242 F.3d at 1150 (quoting *Smolen*, 80 F.3d at 1288).

    Here, Plaintiff testified her daughter is paid by the State of Washington DSHS/Aging and Long-Term Care to provide caregiving services to Plaintiff 166 hours a month and has been for several years. Tr. 65. Plaintiff testified that she requires these services to assist in self-care including bathing and dressing due to her back issues, as well as vertigo. Tr. 65-67. The ALJ, however, discounted her claims without analysis because she "did not provide evidence to substantiate the caregiver or medical need for a caregiver due to vertigo symptoms." Tr. 26. This is insufficient.

    It is not clear, however, why Plaintiff's representative did not assist in providing additional supporting evidence and on remand Plaintiff will assist the ALJ in developing the record with any documentation available to support Plaintiff's need for a caregiver.

    On this record, the ALJ's conclusion Plaintiff's conservative treatment was inconsistent with her allegations is not supported by substantial evidence and this was not a clear and convincing reason to discount her symptom claims.

    *3. Inconsistent Statements*

    The ALJ also found Plaintiff's allegations and hearing testimony were inconsistent with her symptom reports and complaints to providers. Tr. 25-26. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen*, 80 F.3d at 1284.

    Here, the ALJ found most recent evidence of record reflected almost no specific complaints of vertigo symptoms and that the evidence was not consistent with Plaintiff's allegations about need for a caregiver. Tr. 25-26. As discussed *supra*, however, the ALJ failed to discuss relevant evidence, including evidence of

Plaintiff's impairments, and failed to develop the record in terms of her need for a caregiver. On this record, without further discussion, the ALJ's conclusion Plaintiff's allegations and hearing testimony were inconsistent with her symptom reports and complaints to providers is also not supported by substantial evidence.

While the ALJ concluded Plaintiff's medically determinable impairments could be expected to cause few of the alleged symptoms, the ALJ failed to mention or discuss several impairments, failed to discuss relevant evidence, and selectively presented evidence in a manner that minimized Plaintiff's impairments and/or subjective complaints, resulting in mischaracterization of the record. Records show Plaintiff was treated with opiate medication for lumbar stenosis and chronic pain syndrome during the period at issue, that she was also treated for opiate use disorder, and she was had chronic respiratory issues including COPD, which the ALJ failed to adequately assess. *See, e.g.*, Tr. 611, 836. Accordingly, the ALJ's analysis is insufficient.

Upon remand, the ALJ will reassess all relevant medical evidence with the assistance of medical expert testimony, reperform the sequential analysis, and reassess Plaintiffs symptom claims.

**B.    Medical Opinions**

Plaintiff contends the ALJ improperly evaluated the medical opinion evidence. ECF No. 9 at 15-19.

As the claim is remanded for reconsideration of Plaintiff's symptom claims and reconsideration of all relevant medical evidence with the assistance of medical expert testimony, the ALJ will also reconsider all relevant medical opinions. As there are no recent medical opinions, Plaintiff's representative and the ALJ will assist Plaintiff in obtaining a consultative examination or opinion from current provider(s) to determine her current level of functioning; the ALJ will determine whether medical opinions between her date last insured and her Title XVI claim

are relevant to her current claim(s), and the ALJ will obtain medical expert testimony to assist in determining her impairments and level of functioning.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and not free of harmful error. Plaintiff argues the decision should be reversed and remanded for the payment of benefits. ECF No. 9 at 19. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). The Court will also not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, it is not clear that the ALJ would be required to find Plaintiff disabled, or disabled through the entire period at issue, if all the evidence were properly evaluated. Plaintiff's date last insured was in 2008, and she has alleged disability beginning in 2008. *See* Tr. 20. Despite explaining that Plaintiff had prior administrative final determinations on a 2012 Title II claim and had received Title XVI benefits from 2012 through 2016, Tr. 17-18, and despite finding there was no support for reopening any prior denials and/or cessation of benefits, the ALJ went on to make a determination on both Plaintiff's current Title II and Title XVI claims for the entire period at issue from 2008 through the date of the decision. Tr. 17-18, 30. Neither Plaintiff or Defendant has offered any explanation of why or how the ALJ reached already decided and administratively final claims through 2016, and there is no evidence of the prior grant and then cessation of benefits in the administrative record, aside from the ALJ's brief discussion in the procedural history of the claim. Upon remand the ALJ will determine the actual period at

issue and decide Plaintiff's claim(s) based on relevant evidence for the period at issue.

Accordingly, the Court finds further proceedings are necessary to resolve conflicts in the record and to determine the actual period at issue, as well as to further develop the record with updated medical evidence and medical expert testimony to determine Plaintiff's level of functioning during the period at issue; the ALJ will obtain a consultative exam, if necessary.

Upon remand, the ALJ will obtain all updated medical records and reevaluate the medical evidence. The ALJ is instructed to reassess Plaintiff's subjective complaints as well as relevant medical opinion evidence, and to perform the sequential analysis anew with the assistance of medical expert testimony. The ALJ will make new findings on each of the five steps of the sequential evaluation process, take the testimony of a vocational expert, and issue a new decision. The ALJ will take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS HEREBY RECOMMENDED** Plaintiff's Motion for Summary Judgment, **ECF No. 9**, be **GRANTED**; Defendant's Motion for Summary Judgment, **ECF No. 11**, be **DENIED**; and the District Court Executive enter **Judgment for Plaintiff REVERSING and REMANDING** the matter for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within fourteen (14) days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within fourteen (14) days after receipt of the objection. Attention is

directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMJR 2, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to update the docket sheet to reflect the substitution of Frank Bisignano as Defendant, file this Report and Recommendation, and provide copies to counsel.

DATED July 28, 2025.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE